UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                                                    :
RACHEL DIAMOND,                                     :
                                                    :
                              Plaintiff,            :
                                                    :        05 Civ. 4993 (GEL)
          -against-                                 :
                                                    :      **OPINION AND ORDER**
DAVID J. SOKOL; DR. DAVID J. SOKOL,                 :
ATTORNEYS AT LAW; MARC R. LEFFLER,                  :
and LEFFLER & KATES, LLP,                           :
                                                    :
                              Defendants.           :
                                                    :
-------------------------------------------------------------x

Jack A. Gordon and Brett G. Canna, Kent, Beatty &
Gordon, LLP, New York, New York, for Plaintiff.

A. Michael Furman and Andrew R. Jones, Kaufman
Borgeest & Ryan, LLP, New York, New York, for
Defendants David J. Sokol and Dr. David J. Sokol,
Attorneys at Law.

William T. McCaffery, L'Abbate, Balkan, Colavita &
Contini, L.L.P., Garden City, New York, for Defendants
Marc R. Leffler and Leffler & Kates, LLP.


GERARD E. LYNCH, District Judge:

        Plaintiff Rachel Diamond sued her dentist in state court for malpractice after a botched

tooth extraction and prevailed, winning a verdict for $260,000 for pain and suffering.  In this

diversity case, she accuses two successive lawyers who represented her in that matter of legal

malpractice and breach of contract, seeking $3 million for lost earnings and medical expense

damages she alleges she would have won but for defendants' negligent failure to seek such

damages.

Defendants, attorney David J. Sokol and the firm of Dr. David J. Sokol, Attorneys at Law (collectively, "Sokol"), and attorney Marc R. Leffler and Leffler & Kates, LLP, (collectively, "Leffler"), now move for summary judgment.  Plaintiff in effect cross-moves for summary judgment.  For the reasons below, the motions of Sokol and Leffler are granted in part, but for the most part denied.  Plaintiff's cross-motion is denied.

## BACKGROUND

The facts described in this section are undisputed, unless otherwise noted.

This action arises out of defendants' representation of plaintiff in a New York state dental malpractice case against one Ira Gothelf.  On or about March 15, 2000, plaintiff retained the firm with which defendant Leffler was then associated to represent her in that action.  A complaint was filed in state court alleging that Gothelf's negligence in treating plaintiff for problems involving one of her teeth had caused her "personal injury, pain, suffering and other attendant damage" and also "humiliation, embarrassment, and an inability to pursue her normal, social activities and interests."  (Complaint in Diamond v. Gothelf, No. 105914/00, Sup. Ct., County of New York (2000), Sokol Ex. B, at 2212-13.)  It further charged that "plaintiff has and will continue to expend diverse sums of money for the care and treatment of said injuries."  (Id. at 2213.)

Counsel for Gothelf's malpractice insurer served a demand for a verified bill of particulars,[1] requesting, among other information, the "total amounts claimed as special damages

---

[1] Under New York law, "[a] bill of particulars is neither a pleading nor a discovery device . . . . [I]t is an amplification of a pleading."  Mark Davies, McKinney's Forms Civil Practice Law and Rules, References, § 4:346(a) (citing N.Y. C.P.L.R. §§ 3011, 3012(a)) (West 2006); see also Linker v. County of Westchester, 625 N.Y.S.2d 289 (2d Dep't 1995) ("It is settled that a bill of particulars is intended to amplify the pleadings, limit the proof, and prevent

for . . . physician's/dentist's services[,] . . . loss of earnings[,] . . . [and] any other items of special damage." (Sokol Ex. C, at 1537.) On July 5, 2000, Leffler's firm responded with a verified bill of particulars ("the July 2000 bill"), sworn to and signed by Diamond. The July 2000 bill stated, among other information, that "[n]o claim is made for lost income," and that amounts for special damages would be claimed at a later date. (Sokol Ex. C, at 1580.) In a letter from Leffler's firm seeking plaintiff's verification, Diamond had been advised to review the enclosed draft of the July 2000 bill for accuracy and make "any changes and/or corrections." (Sokol Ex. C, at 1349.)

When deposed by Gothelf's counsel in December 2000, Diamond testified, in part, "It has been very difficult between the surgeries and being ill and all the pain to have a full-time job. I have been freelancing and . . . everybody that I work with knows that I have been sick and they are hesitant to want to hire me on a full-time basis because they are afraid I will be sick again." (Sokol Ex. D, at 1129.) An updated verified bill of particulars ("the May 2001 bill"), claiming $3314 for plaintiff's medical expenses, was served with supporting receipts and authorizations on May 31, 2001.[2] (Sokol Ex. G.) The May 2001 bill also stated, "In addition to those injuries previously claimed the plaintiff claims the following injuries: TMJ syndrome [and] inability to obtain health insurance." (Id. at 2565.) It does not mention loss of income.

At some point Leffler left plaintiff's first retained law firm to form his own firm, Leffler & Kates. Diamond signed a retainer with Leffler & Kates on August 31, 2001, and a notice of

---

surprise at trial."). That such a document is verified signifies that "the pleading is true to the knowledge of the deponent, except as to matters alleged on information and belief, and that as to those matters he believes it to be true." N.Y. C.P.L.R. § 3020(a) (McKinney's 1999).

[2] Although the May 2001 bill bears the caption heading, "Supplemental Bill of Particulars" (Leffler Ex. Q), the proper characterization of this document remains disputed. The dispute is discussed infra, with respect to Leffler's summary judgment motion.

substitution of counsel was filed on October 9, 2001. In the interim, on September 26, 2001,

Leffler's former firm filed a note of issue and certificate of readiness on plaintiff's behalf,

alerting the court that the case was ready for trial.[3]  On July 18, 2002, the state court adjourned

trial for further discovery and ordered plaintiff to file another note of issue by April 21, 2003.

(Sokol Ex. J.)

    Another change of counsel took place in late 2002. In a letter dated October 21, 2002,

Sokol and Leffler together informed Diamond that "[i]t has become necessary for Dr. Marc

Leffler to leave the firm and to take a position elsewhere, where his management of your case

will not be feasible. However, Dr. David Sokol is willing and able . . . to continue to prosecute

your case to its conclusion."[4]  (Sokol Ex. L.)  Diamond responded to Sokol in November 2002

that "I have decided that I would like you [to] handle my case going forward."  (Sokol Ex. M.)

    Sokol arranged for economist Richard Ruth to produce a report on Diamond's economic

losses. He asked Diamond to furnish various information for that purpose, and she submitted a

five-page account of her employment difficulties and her expectations of future medical needs.

In a September 13, 2003, letter to Sokol, Ruth indicated that he had reviewed Diamond's

information and suggested consulting a vocational expert, with whose analysis "I can then

provide past and future lost earning capacity in gross value and the future gross value of medical

---

[3] Diamond does not allege that Leffler had any knowledge of his former firm's plans to act, or that he failed to inform his former firm that he would continue to represent Diamond under the auspices of his new firm. The filing of a note of issue is material, because such filing affects a litigant's ability to amend her bill of particulars as of right under New York procedural law; once a case is noticed for trial, claims may only be amended by leave of the court. N.Y. C.P.L.R § 3042(b).

[4] Leffler and Sokol are apparently qualified dentists as well as lawyers, and thus are occasionally referred to in the record with the title "Doctor."

4

needs." (Sokol Ex. Q, at 1217.)  Ruth's letter noted that "the Verified Bill of Particulars says that no claim is made for lost income." (Id.)  In a November 10, 2003, letter to Sokol, Diamond wrote that she "agreed" that it was "not financially appropriate to hire a vocational expert at this time." (Sokol Ex. R.)

In the summer of 2004, the case was finally readied for trial.  At some point during the litigation it was discovered that Gothelf had died.  On July 8, 2004, the court issued various orders permitting the action to proceed against Gothelf's estate, including an order limiting recovery to $1 million, the value of Gothelf's liability insurance policy.  (Sokol Exs. U,V.) Although Sokol had filed a notice of readiness for trial in January 2003, declaring that all pleadings and bills of particulars had been served and that discovery was complete (Sokol Ex. O), on July 15, 2004, he served the defendant estate with a copy of a report Ruth had produced, dated the same day, estimating Diamond's past and future earnings losses at either $411,860 using one method or $1,958,975 using another.  The estimates apparently relied on Diamond's own hypotheses about her employment losses, which she had provided to Ruth on Sokol's request.  (See Sokol Ex. X.)

The four-day dental malpractice trial began on August 3, 2004.  On the first day, the judge granted defendant estate's motion in limine to exclude all evidence of loss of income, based on the objection that "the bill of particulars . . . states no claims made for such lost income, and we were just served with [Ruth's report] within the last week or ten days and that is when it was first raised." (Sokol Ex. AA, at 2401-02.)  The court noted, "Under the circumstances, . . . notice [of the expert report] itself does not cure prejudice with respect to defendant's inability to properly conduct discovery on this issue historically." (Id. at 2403.)

5

At the end of the trial, the jury returned a plaintiff's verdict for $260,000, of which $100,000 was awarded for past pain and suffering and $160,00 for future pain and suffering. Both parties appealed the resulting judgment, but the appeals were abandoned a year after the trial for a settlement of $250,000.

On May 25, 2005, Diamond filed the instant action against Sokol and Leffler. Defendants move for summary judgment; plaintiff opposes and cross-moves for judgment in her favor.

## DISCUSSION

### I.   <u>Legal Standards</u>

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A "genuine issue of material fact" exists if the evidence is such that a reasonable jury could find in favor of the non-moving party.  <u>Holtz v. Rockefeller & Co.</u>, 258 F.3d 62, 69 (2d Cir. 2001).  The moving party bears the burden of establishing the absence of any genuine issue of material fact.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986).  In deciding a summary judgment motion, the court must "resolve all ambiguities and draw all reasonable references in the light most favorable to the party opposing the motion." <u>Cifarelli v. Vill. Of Babylon</u>, 93 F.3d 47, 51 (2d Cir. 1996).  The court is not to make any credibility assessments or weigh the evidence at this stage.  <u>Weyant v. Okst</u>, 101 F.3d 845, 854 (2d Cir. 1996).

The nonmoving party, however, may not rely on "conclusory allegations or unsubstantiated speculation." Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), and must make a "showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The substantive law applied to the case determines which facts are material for purposes of deciding a summary judgment motion. Anderson, 477 U.S. at 248. In this diversity action, New York's law of legal malpractice applies.[5] See, e.g., Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 n.2 (2d Cir. 2006) (deeming New York law applicable to claim of legal malpractice regardless of basis of federal jurisdiction, because the claim has its source in state law) (citation omitted). In New York, the plaintiff must prove each of the claim's essential elements: (1) that defendant was negligent; (2) that defendant's negligence was the proximate cause of the claimed injury; and (3) that plaintiff suffered "actual and ascertainable" damages. Rubens v. Mason, 387 F.2d 183, 189 (2d. Cir. 2004), citing McCoy v. Feinman, 99 N.Y.2d 295, 301-02 (2002); see also Achtman, 464 F.3d at 337-38 (stating New York malpractice elements).[6]

––––––––––––––––––

[5] Plaintiff's breach of contract claim will be dismissed as duplicative of her legal malpractice claim, for reasons discussed below.

[6] New York's legal malpractice standard sometimes is worded differently, such that the "prongs" of the test are otherwise numbered; the necessary elements, however, are well established. See, e.g., Rubens v. Mason, 417 F. Supp.2d 262 (S.D.N.Y. 2006) (granting defendants' motion for summary judgment on remand, because no reasonable jury could conclude that, but for the alleged breaches of duty, plaintiff would have prevailed) ("[A] plaintiff must establish: (1) a duty, (2) a breach of the duty, and (3) proof that actual damages were

7

To satisfy the first element, a plaintiff must show that defendant's conduct "fell below the ordinary and reasonable skill and knowledge commonly possessed by a member of the profession." Bernstein v. Oppenheim & Co, 554 N.Y.S.2d 487, 489 (1st Dep't 1990) (citations omitted). Mere error of judgment or "selection of one among several reasonable courses of action does not constitute malpractice." Rosner v. Paley, 65 N.Y.2d 736, 738 (1985); see also Bernstein, 554 N.Y.S.2d at 489 ("an attorney . . . is not liable . . . where the proper course is open to reasonable doubt"). Generally, an attorney may only be held liable for "ignorance of the rules of practice, failure to comply with conditions precedent to suit, or for his neglect to prosecute or defend an action." Bernstein, 554 N.Y.S.2d at 487. Reasonableness of a defendant-attorney's conduct may be determined as a matter of law. Rosner, 65 N.Y.2d at 738; see also Bernstein, 554 N.Y.S.2d at 490 ("some of plaintiff's allegations concerning defendant's conduct of the litigation . . . are simply dissatisfaction with strategic choices, and thus . . . do not support a malpractice claim as a matter of law"). In other words, defendant is entitled to summary judgment dismissing the case, where the record reveals no way a reasonable factfinder could find defendant to have been negligent.

The second element, causation, is often described as the "but for" aspect of the claim, and requires a plaintiff opposing summary judgment to show evidence from which a reasonable factfinder could conclude that "it is more probable that the [complained of] event was caused by the defendant than that it was not." Rubens, 387 F.3d at 189 (citation omitted). Ultimately, the factfinder in a legal malpractice action must, in effect, put herself in the shoes of the reasonable factfinder in the underlying suit and determine if the result there would have been different

proximately caused by the breach of the duty.") (citations and internal quotation marks omitted).

absent the alleged malpractice.  Id. at 190 (citation omitted).  Specifically, New York law requires that the plaintiff be able to meet the "'case within the case' requirement, demonstrating that 'but for' the attorney's conduct the client would have prevailed in the underlying matter." Weil, Gotshal & Manges, LLP v. Fashion Boutique of Short Hills, Inc., 780 N.Y.S.2d 593, 596 (1st Dep't 2004).  Here, to have "prevailed" means plaintiff would have won a greater verdict but for her counsel's failure properly to advance certain claims.[7]

The third, or damages, element requires plaintiff at the summary judgment stage to show the possibility of proving that an actual, identifiable loss resulted from defendant's negligence. "Mere speculation of a loss resulting from an attorney's alleged omissions is insufficient to sustain a prima facie case sounding in legal malpractice."  Luniewski v. Zeitlin, 591 N.Y.S.2d 524 (2d Dep't 1992).  Damages claimed in a legal malpractice action must be "actual and ascertainable," not "too speculative and incapable of being proven with any reasonable certainty."  Zarin v. Reid & Priest, 585 N.Y.S.2d 379, 382 (1st Dep't 1992).

While the standard for proving legal malpractice is a challenging one, plaintiff need not prove her case at this stage.  She need only show what is required to survive any summary judgment motion, which is that a reasonable jury could find in her favor on the existing record. "[W]hether malpractice has been committed is normally a factual determination to be made by the jury."  Corley v. Miller, 520 N.Y.S.2d 21, 23 (2d Dep't 1987).  Once the  plaintiff has shown sufficient evidence that a reasonable factfinder, drawing all inferences in her favor, could find

---

[7] Diamond's complaint alleges that she "would have succeeded on the merits of the underlying Action . . . but for Defendants' negligence."  (Compl. ¶ 40.)  For the sake of clarity, the Court notes the obvious, that plaintiff did succeed on the merits of the underlying case, having proved it sufficiently to win a verdict; plaintiff's argument is that her recovery would have been larger but for defendants' negligence.

the required elements, she is entitled to proceed to trial, no matter how strong or weak her case may seem to the Court.

## II.   <u>Plaintiff's Malpractice Claims</u>

The essence of Diamond's malpractice claim, as presented in response to defendants' motions, is that defendants fell short of reasonable professional standards by failing properly to present her claims for medical expenses and lost earnings damages.

Various other claims arguably set forth in the complaint have largely been abandoned. The complaint accuses defendants of negligence for their failure to plead "all her damages arising out of the dental malpractice." (Compl. ¶ 39(a).) Yet plaintiff's submissions do not colorably support a claim that defendants neglected any claims other than those for lost income and medical expenses; by "all her damages," the Court takes plaintiff to mean these particular categories of damages.[8]

Similarly, plaintiff's response to the summary judgment motions does not attempt to support the complaint's sweeping charges that defendants "failed properly to prepare for trial" and "failed properly to conduct the trial." (<u>Id</u>. ¶¶ 39(f),(g).) Except with respect to the specific claims relating to medical expenses and lost earnings, these allegations are vague and conclusory, and plaintiff makes no effort to explain how such alleged shortcomings in counsel's performance proximately caused any loss.

Accordingly, construed in the context of plaintiff's full submissions, Diamond's claim is that, but for defendants' negligent failure fully to plead her lost income and medical expense

---

[8] Plaintiff has expressly withdrawn a claim for loss of hearing damages that the complaint alleged had not been not pursued in the underlying litigation. (<u>See</u> Sokol Ex. OO.)

claims and to seek these damages at all, Diamond would have secured ascertainably more than her $260,000 verdict for pain and suffering.  (See id. ¶¶ 39(b),(d),(e), 40.)

III.    **Sokol's Summary Judgment Motion**

A.  Negligence

Sokol contends that Diamond is unable to meet any of the elements of the prima facie case against him.  To begin with, he argues, as does Leffler, that plaintiff herself bears the full responsibility for the absence of any claims from her state case, as she verified bills of particular that did not include them.  Sokol argues that a person is bound by signing a legal document, so long as he or she understands its content.  (Sokol Mem. 14.)  Yet most of the authorities cited for this proposition enforce the binding nature of signatures on *contractual* agreements, such as settlements, not pleading-type documents.  For example, in Beattie v. Brown & Wood, 663 N.Y.S.2d 199 (1st Dep't 1997), the plaintiff claimed not to have been advised by his attorney that a settlement agreement he signed withdrew his counterclaim.  The court affirmed dismissal of the complaint, since the agreement revealed on its face what the client claimed he was not told; his claim was thus "flatly contradicted by documentary evidence." Id. at 199.  Even in that context, however, more potent authority has cautioned that a client may not be barred absolutely from maintaining a legal malpractice action, where she claims not to have read the contractual agreement she signed.  In Arnav Industries, Inc. Retirement Trust v. Brown, Raysman, Millstein, Felder & Steiner, LLP, 96 N.Y.2d 688 (2001), New York's highest court reinstated a legal malpractice claim where plaintiffs claimed to have been misadvised by counsel about the contents of a revised settlement agreement they had signed without reading.

11

In any event, such cases are hardly apposite here.  Diamond does not contend, like the plaintiffs in those cases, that she was unaware of the terms of an agreement she signed without reading.  She implicitly acknowledges that she read and understood the contents of the bills of particulars, but complains that she learned only too late the prejudicial consequences of failing to amend them.  (P. Dep., Sokol Ex. PP, 45:17-19, 169-170.)  That legal risk appears nowhere on the face of the documents; nor do defendants profess that they explained the risk to Diamond at the times of her signing or that a reasonably skilled lawyer would not have.  The fact that plaintiff signed a bill of particulars that did not list an item of damages does not preclude her attorneys' liability if they failed to advise her of the significance of the omission, failed to take steps that a reasonable lawyer would have taken to cure the omission at a later point, or unreasonably advised her about which damages to assert.

Sokol further denies negligence by insisting that it was reasonable litigation strategy for him to abandon economic damages altogether and focus on pain and suffering.  (Sokol Mem. 24-29.)  He does not dispute that he never tried to amend the pleadings or bill of particulars to reflect claims for lost earnings or future medical expenses, or that he did not seek at trial those past medical expenses that had previously been disclosed and subjected to discovery.  Rather, he essentially argues that it would have been pointless to take these steps, and that he reasonably pursued pain-and-suffering recovery in lieu of – rather than, in addition to – economic losses.  The state trial transcript shows Sokol put on a strong case for pain and suffering damages.  The jury responded to testimony of a root canal gone painfully wrong with an award of $260,000.  (See Sokol Ex. AA.)  Yet the record presents genuine issues of fact as to whether the failure to seek economic damages was a reasonable decision.  Thus, while the record shows the value of

12

the efforts Sokol did expend, it does not support summary judgment for those he did not.

Sokol argues, in effect, that Diamond's claim for lost earnings was so weak that it could only have detracted from her more persuasive claims for pain and suffering, and that it was therefore not an unreasonable decision to forgo the claim. A reasonable factfinder could agree. Such a factfinder would also be entitled to conclude, however, that Sokol did not make any such decision, but rather that he attempted to develop and present evidence of lost earnings and was precluded from offering such evidence because of his negligent failure to amend the bill of particulars. It is undisputed that, just days before the trial, Sokol served Ruth's expert report on lost earnings damages on the defendant. The defendant then successfully moved to exclude such evidence.

Sokol insists that he served Ruth's report merely to leverage an increased settlement offer, contending that Diamond's lost earnings claims actually lacked merit and that he reasonably never intended to argue them at trial.[9] (Sokol Mem. 26-27.) This argument undermines itself. A report too flimsy to be persuasive at trial could not plausibly be expected to generate a better settlement offer; conversely, if Sokol's settlement ploy was a reasonable tactic

---

[9] Sokol offers the opinion of another attorney, John A. McPhilliamy, in support of this alleged strategy. Yet he submits no information sufficient to qualify McPhilliamy as an expert. McPhilliamy does not articulate a reasonable professional standard in his report, merely offering his own legal conclusions about the case. (See Sokol Ex. DD.) As Sokol himself points out with respect to plaintiff's proffered legal expert, "An expert may not be utilized to offer opinion as to the legal standards which *he believes* should have governed a party's conduct." Russo v. Feder, 750 N.Y.S.2d 277, 282 (1st Dep't 2002) (emphasis added). In that case, the supposed expert merely attested that he "would have done things differently, therefore the attorney being challenged was incompetent." (Id.) While the qualification of plaintiff's expert also remains questionable, her report at least elaborates on procedure and case law that, implicitly, a reasonably skilled lawyer in New York would have been expected to know and follow. (See P. Ex. 1.) In any event, the qualifications and opinions of dueling experts are issues for trial; defendant cannot win summary judgment on the strength of a contested expert opinion.

that could have resulted in a more favorable result for Diamond, that gambit was effectively defeated by defendant's successful motion to exclude the evidence.  Either way, a jury could reasonably conclude that the failure to amend the bill of particulars worked to the disadvantage of Diamond.

Sokol's submissions, including his experts' opinions, contesting the merits of Diamond's damages claims consist entirely of analyses performed for the purposes of this action.[10]  He offers nothing to establish that, at the time of his decision-making in her state case, he knew that Diamond's economic claims were bogus and thus strategically avoided them.  Regardless of when Sokol became associated with the case, he was required to familiarize himself with the record, and he therefore must have known that Diamond had been complaining since at least her December 2000 deposition about employment difficulties relating to her dental issues.  In any event, Sokol has testified that he was aware of her employment difficulties no later than September 2003: "Rachel told me what her employment history was like . . . . [that she] had a lot of pain and wasn't able to work regularly at a job without taking off because of the pain." (Sokol Dep., Sokol Ex. SS, 118:19-119:17.)  In addition, the information Diamond provided to Ruth at Sokol's request, in about January 2003, recounted extensive concerns about securing an appropriate job and covering future medical costs.  Finally, far from bolstering his argument of reasonable strategy, Sokol's own deposition testimony appears to suggest that he mistakenly believed economic and pain-and-suffering damages to be overlapping, rather than distinct,

_____

[10] Diamond also submits a number of recent documents purporting to show that her underlying economic claims were worth millions.  This evidence, like Sokol's damages-related evidence, is properly left to be debated at trial.  At this summary judgment stage, it is unnecessary to consider any evidence beyond Ruth's July 2004 report.

categories of claims.  (See Sokol Dep. at 129:8-24.)

Moreover, Sokol points to no evidence suggesting that he knew or considered that exclusion was a likely consequence of failing to amend the bill of particulars, knowledge that Diamond implicitly argues any reasonably skilled lawyer would have had.  He does not dispute the testimony of Diamond's proffered legal practice expert, who correctly describes at least part of New York's procedural rules relating to the preservation of claims for trial.  (See P. Ex. 1, at 5-7.)  Plaintiff's expert accurately cites New York case law providing that while serving an amended bill of particulars after a note of issue has been filed requires leave of court, courts freely permit such amendments, and the court's discretionary decision whether to allow amendment will depend on factors including prejudice, undue delay, and unfair surprise.  (Id., citing Abdelnabi v. New York City Transit Authority, 709 N.Y.S.2d 548 (1st Dep't 2000)); see also Romanello v. Jason, 756 N.Y.S.2d 657 (2d Dep't 2003).  Mere exposure of the defendant to greater liability does not constitute prejudice.  Abdelnabi, 709 N.Y.S.2d at 549.

On the other hand, the longer a plaintiff delays in seeking leave to amend, the more likely it is that leave will be denied.  See, e.g., Larkin v. Diaz, 685 N.Y.S.2d 300, 301 (3d Dep't 1999) ("It is axiomatic that when a party attempts to introduce evidence at trial which does not conform to the bill of particulars, the appropriate remedy is the preclusion of that evidence.") (citation omitted).  Thus, the leading New York practice commentary counsels plaintiffs' lawyers, with specific reference to lost earnings claims, of the importance of promptly moving for leave to amend:

> [I]f plaintiffs in their bill of particulars fail to identify lost earnings
> . . . then at trial they may well be required to move to amend their
> bill . . . to include that item of damages . . . .  [T]he motion may
> well be denied, thus precluding recovery . . . .  Accordingly,

> parties should keep their bill of particulars in mind throughout the case and amend it (or move to amend it) whenever some substantial new information responsive to the demand comes to light.

Davies, McKinney's Forms CPLR, References, § 4:346(f) (West, 2006).

Plaintiff's essential claim is that a reasonably skilled lawyer, knowing of the lost earnings information in Ruth's report, would have taken care to develop a proper foundation for admitting the evidence, by timely moving to amend the complaint or bill of particulars.[11] Sokol fails to establish that his last-minute service of lost-earnings evidence, without attempting to cure its likely inadmissibility, constituted reasonable strategy as a matter of law. Whether Sokol's explanation should prevail must therefore remain an issue for trial.[12]

Sokol fares no better with respect to his failure to seek damages for plaintiff's medical expenses. Sokol admits that he never substantively considered Diamond's future medical expenses (Sokol Dep., 112:5-23), and thus it is difficult to credit his argument that he believed them to lack merit or otherwise to be insupportable.

---

[11] Plaintiff's submissions suggest other steps a reasonable lawyer might have been expected to take to be able to introduce this evidence, such as moving to adjourn the trial, reopen discovery, and build a foundation. Indeed, the record shows the state court had previously been amenable to adjournment. (See Sokol Ex. J.)

[12] That plaintiff's theory survives summary judgment, of course, does not indicate that it is likely to prove persuasive. Diamond's claims that her entire career was derailed by her dental problems over a finite period of time are not self-evidently reasonable, and Diamond presents no expert testimony refuting Sokol's contention that presenting the claims would have detracted from the credibility of her case. Because the credibility of these claims is for the jury to decide, the Court must assume their truth, and on that assumption it could be inferred that it would be unreasonable for any competent lawyer to forgo such valuable claims. A trial jury may well find this theory less than persuasive.

As to Diamond's *existing* medical expenses, notwithstanding Sokol's plausible argument of deliberate strategy in not pursuing them (Sokol Mem. 23), summary judgment must also be denied.  Existing medical expense claims appear properly to have been disclosed as of the May 2001 bill, but it seems Sokol never supplemented those amounts.  Plaintiff implicitly submits that a reasonably competent lawyer would have done so.  (See P. Ex. 1.)  Diamond avers that she had incurred some $30,000 of medical costs by the time of the trial.  (See P. Aff. ¶ 45.)  Diamond's existing medical expenses were easy enough to document, and it seems there would have been little risk that a jury would discredit them or reduce its overall damage award if confronted with a separate demand for actual out-of-pocket expenses.  The record does not resolve whether Sokol unsuccessfully attempted to introduce evidence of additional expenses at trial or whether, if he did, such evidence was excluded for reasons – lack of authentication, unfair surprise – that the ordinary lawyer might have been expected to foresee and prevent.[13]  Sokol's insistence that the medical expenses were simply too piddling to present to a jury does not suffice to extinguish the issue of his reasonable performance, especially given plaintiff's contention that the actual amount was significant.  His explanation is merely part of the information the reasonable factfinder will have to weigh in assessing his compliance with the "reasonable skill" standard.  Bernstein, 54 N.Y.S.2d at 489.

---

[13]  While there is some allusion in the parties' papers to the state court's exclusion of medical expense evidence, the trial transcript does not clearly show that such exclusion in fact occurred.  Diamond has testified to having a conversation with Sokol during the state trial, in which "I was upset that a lot of my medical records were not properly certified so they cannot be introduced . . . .  Also [we] discussed the fact that I could not introduce medical bills which had been introduced to Dr. Sokol well before my trial."  (P. Dep. 169:5-170:19.)

Whether Sokol's failure to pursue Diamond's potential claims for medical expenses and lost earnings was a reasonable strategy, calculated to maximize total recovery by focusing on the strongest and potentially largest claims of pain and suffering, or whether the claims were simply forfeited by Sokol's failure to take appropriate steps to avoid the preclusion of such evidence, or by his neglect to offer relevant evidence, are factual issues to be resolved by the jury at trial. Plaintiff may or may not be able to sustain her burden of persuasion at trial, but on the present record, it cannot be said as a matter of law that Sokol's representation was adequate.

B.  <u>Proximate Cause and Actual Damages</u>

Sokol also denies that his failure properly to claim lost income damages could be found to be the proximate cause of Diamond's alleged deprivation.[14]  He argues, first, that it is "pure speculation" whether the state court would have granted leave to amend her claims.  (Sokol Mem. 3.)  But he cites no rule absolutely precluding malpractice liability where a court's discretion is involved.  Nor has he demonstrated it was sound practice for him to file a notice of readiness for trial several months before such notice was due and without fully disclosing Diamond's economic case, thereby reducing the likelihood that permission to amend would be granted.

In any event, the fact that no one can say for certain whether a judge would have granted a motion to amend, had such motion been timely made, does not render damages speculative. The legal malpractice standard specifically contemplates an inquiry into what *might* have been. That is the very nature of the "case within the case" assessment, whereby the reasonable

---

[14] His motion as to his prosecution of Diamond's medical-expense claims only argues the negligence element, addressed *supra*.  But the following reasoning applies to that issue as well.

factfinder is to determine whether plaintiff's projected better result – in this case, a bigger award, had her counsel advanced additional claims – would more likely than not have occurred.  Weil Gotshal, 780 N.Y.S2d at 596.  It remains an issue for trial whether the factors courts typically consider in deciding an application to amend claims in these circumstances would have played out in Diamond's favor.

Even if he had successfully amended the claims, Sokol next argues, it is "speculative" whether the jury would have awarded Diamond any additional damages for lost wages, because she had damaged her credibility by previously verifying bills of particular lacking such a claim, and because the claim itself lacked merit.  (Sokol Mem. 3.)  These arguments are for the jury.  A reasonable factfinder might well conclude that its counterpart at the underlying trial would have rejected Diamond's lost earnings claims as exaggerated, or found her credibility questionable in light of the omission of those claims from the earlier verified bill of particulars.  But it could also reach a different conclusion.  Sokol fails to demonstrate that Ruth's $400,000-to-$2 million assessment of loss could not have been supported, particularly if he had successfully taken steps to forestall trial and reopen discovery.  Just as there is no question that Diamond's credibility would have been an issue for the jury at the underlying trial had her claims been presented, it is equally an issue for the jury in this trial whether her claims would more likely than not have been successful.[15]

_____

[15] Sokol attempts to blame Diamond for the failure to develop adequate evidence of lost earnings, due to her disinclination to hire a vocational expert, whose testimony would have bolstered Ruth's.  He submits a November 10, 2003, letter, in which Diamond states, "I agree it is not financially appropriate to hire a vocational expert at this time."  (Sokol Ex. R.)  But that evidence is only equivocal, and could be read simply as indicating Diamond's concurrence with Sokol's advice.  The significance of this evidence is for a jury to decide.

Finally, Sokol argues that "[i]t is speculative as to whether the addition of loss of income and loss of out-of-pocket medical expenses claims would have increased plaintiff's underlying verdict." (Sokol Rep. Mem. 6.)  In other words, he contends that Diamond has not established ascertainable damages, because, even if the evidence of lost earnings and medical expenses had been admitted and proven persuasive in their own terms, the jury might simply have reduced the pain and suffering award in an amount corresponding to these other proven damages.  Once again, however, Sokol appears to confuse the inquiry at trial with the summary judgment standard.  Plaintiff is not required to prove any particular amount in damages at this stage of the case; she is merely required to produce a showing upon which real damages resulting from malpractice could be ascertained.  See, e.g., Zarin, 585 N.Y.S.2d at 382.  Diamond has submitted ample material estimating the lost earnings and medical expense damages she claims she would have won but for defendants' alleged malpractice, and defendants have submitted counter-estimates.  The exchange of papers more than establishes that the claimed damages are not only theoretically ascertainable, but are amenable to cold, hard calculation.  The plausibility of Sokol's account of how a jury would likely have decide the case is an issue for trial.

C. Damages Cap

Sokol's argument that Diamond's damages must be capped at $740,000 – the remainder of the underlying defendant's $1 million dental malpractice insurance cap, after subtracting the $260,000 state verdict – is more persuasive.  It is undisputed that the trial was governed by the trial court's July 8, 2004, order limiting recovery to the insurance amount, which permitted the case to proceed as against the deceased defendant's estate.  Diamond attempts to dispute that she authorized Sokol's decision not to oppose the motion resulting in that order.  (P. Rule 56.1 Stmt.

20

¶ 26.)  Yet the record contains her May 17, 2004, letter to Sokol, articulating her understanding of the rationale for agreeing to the cap – that the agreement would, *inter alia*, keep the insurance company in the case – and that letter does not remotely indicate any dissatisfaction with the arrangement.  (Sokol Ex. T.)

In any event, Diamond's complaint in this legal malpractice action does not allege defendants' negligence in advising acquiescence in the award limit or in failing to unearth additional sources for recovery.[16]  Plaintiff points to no evidence suggesting that the strategy embodied in agreeing to the cap was a departure from reasonable professional performance and offers only conclusory and vague intimations that additional sources existed from which recovery could have been made.

Since Diamond could not have recovered more than $1,000,000 in total damages at trial, and since she has offered no basis for concluding that the limit itself was the product of professional malpractice, as a matter of law any negligent failure on the part of counsel to seek additional damages cannot have cost her more than $740,000.

D.  Breach of Contract

Plaintiff's breach of contract claim must, as Sokol requests (Sokol Mem. 33), be dismissed as duplicative of her legal malpractice claim.  Plaintiff alleges that defendants bore a contractual duty "to represent her in litigating her action for dental malpractice" and that they "breached said contract by failing to exercise the reasonable skill and knowledge commonly possessed by a member of the legal profession."  (Compl. ¶¶ 43, 44.)  Yet a claim for breach of

---

[16] The law plaintiff cites on "noncollectibility" is inapposite, as defendants mention nothing about noncollectibility but rather argue that plaintiff is bound by her decision in the underlying case.

contract is properly dismissed as "redundant . . . of a malpractice claim," where it is does not

"rest upon a promise of a particular or assured result," but rather upon defendant's alleged

breach of professional standards.  Senise v. Mackasek, et al., 642 N.Y.S.2d 241, 242 (1st Dep't

1996).  Diamond does not allege that defendants promised a particular result,[17] rather than

simply undertaking to litigate her case.  Therefore, the breach of contract claim is dismissed as

duplicative of that for legal malpractice.

## IV.  Leffler's Motion for Summary Judgment

Diamond contends that Leffler was negligent in omitting items of damages from the July

2000 and May 2001 bills of particulars in the first place.  Leffler seeks summary judgment on the

ground that plaintiff will not be able to establish proximate cause as against him.  He argues that,

even assuming he was negligent, he cannot be found liable as a matter of law, because he

withdrew from representing plaintiff in about October 2002, and Sokol thereafter had time to

cure any effects of Leffler's shortcomings.

Plaintiff characterizes as "disputed" whether Leffler may be deemed to have withdrawn

from representing her by his joint letter with Sokol of October 21, 2002.  (P. Rule 56.1 Stmt.

Opp. Leffler ¶ 19.)  Yet plaintiff does not deny receiving that letter, which is clear and

unequivocal, and her only factual offering in opposition to a finding of withdrawal is her

recollection that *Sokol*, during a meeting subsequent to the date of Leffler's withdrawal letter, led

her to believe Leffler would remain available if needed.  (See P. Opp. Leffler at 15.)  Plaintiff

submits nothing to show that *Leffler* ever intimated his continuing availability to her or that

_____

[17] During her deposition, Diamond expressly denied any such promise of a favorable outcome:  "Q: Did Dr. Sokol ever tell you might lose the case?  A:  He said it was a possibility." (P. Dep., Sokol Ex. PP, at 97:18-20.)

Sokol's purported representation caused her actually to rely on Leffler's availability in any material or even superficial way.[18]  On the contrary, Diamond in a November 7, 2002, letter addressing only Sokol, several weeks after the date of the joint letter announcing Leffler's withdrawal, expressed her wish to be represented by Sokol going forward.  (See Sokol Ex. M.)

Diamond further argues that Leffler's withdrawal letter must be denied effect as a matter of law, because, as is undisputed, he failed to comply with New York rules for withdrawing as attorney of record.  (P. Opp. Leffler, 11-15.)  Yet the case law plaintiff cites does not establish a rule that withdrawal may only be accomplished in accordance with the rules set forth in N.Y.C.P.L.R. § 321(b).[19]  Rather, most of those decisions enforce the provision in order to protect the interests of *other* parties – adversaries or co-litigants – who would be affected adversely by any ambiguity as to a party's authorized representative.  See, e.g., Blondell v. Malone, 459 N.Y.S.2d 193, 194 (4th Dep't 1983) ("Until the attorney of record is removed by [CPLR § 321(b) procedure], *as to adverse parties*, his authority as attorney for his client continues") (emphasis added); Moustakas v. Bouloukos, 492 N.Y.S.2d 793 (2d Dep't 1985) (mere letter, without use of CPLR procedure, did not render withdrawal of one co-plaintiff's

---

[18] To the extent that an issue remains as to Sokol's representation to Diamond of Leffler's continuing availability, it is not material to this case.  Sokol does not rely on Leffler's conduct, or lack thereof, after Leffler's October 2002 withdrawal letter, in order to disclaim his own professional duty.

[19] That provision reads, in pertinent part, "[A]n attorney of record may be changed by filing with the clerk a consent to the change signed by the retiring attorney and signed and acknowledged by the party. Notice of such change of attorney shall be given to the attorneys for all parties in the action or, if a party appears without an attorney, to the party . . . . An attorney of record may withdraw or be changed by order of the court in which the action is pending, upon motion on such notice to the client of the withdrawing attorney, to the attorneys of all other parties in the action or, if a party appears without an attorney, to the party, and to any other person, as the court may direct." N.Y. C.P.L.R. § 321(b) (McKinney's 1999.)

counsel effective as against another plaintiff, for purposes of universal settlement agreement); Hawkins v. Lenox Hill Hospital, 526 N.Y.S.2d 153, (2d Dep't 1988) (affirming trial court's denial of client's motion to discharge attorneys and finding those attorneys' service of papers on client's adversary, in the absence of a § 321(b) discharge, to have been authorized).

Here, there is no allegation that the underlying defendant misunderstood Sokol's takeover of the case or presumed Leffler to have continued his representation in any way, let alone in a way that affected Diamond as relevant to this legal malpractice action.  Moreover, to the extent the courts have enforced formal substitution of counsel rules to protect the client's interest, as Diamond submits they have, lack of compliance with the rule has been treated as only one among a number of factors creating an issue as to actual withdrawal.  See Billis v. Leighton, Leighton & Leighton, 776 N.Y.S.2d 792, 792 (1st Dep't 2004) (affirming denial of summary judgment in legal malpractice case, where issues of actual withdrawal of counsel remained, noting evidence that movant firm had informed client that purported successor counsel "work[ed] for" it and that "[b]oth of our legal firms are now jointly responsible for your representation").  Here, plaintiff has not alleged any actions by Leffler that would diminish the objective effect of his withdrawal letter, nor does she point to any evidence, or even allege, that Leffler's failure to follow § 321(b) procedure induced her to continue relying on him for legal representation.[20]  Thus, there is no genuine issue of material fact as to Leffler's withdrawal from

---

[20] Nor has plaintiff offered any authority whatsoever for her proposition that an attorney remains liable so long as he retains a share in the fee for the underlying case.  (P. Opp. to Leffler, 15.)  It is not alleged that this interest was intended to compensate Leffler for services he would perform after he sent Diamond his letter of withdrawal.  Plaintiff contends that the pegging of Leffler's fee to her "ultimate recovery" evidences his "continuing . . . involvement in the Underlying Action" (id.), but this payment scheme merely followed the common contingency-fee regime of personal injury actions.  (Id.)

representing Diamond as of at the latest November 7, 2002, the date of Diamond's letter acknowledging his withdrawal.

Leffler correctly cites authority supporting the general principle that a withdrawn attorney is absolved of continuing liability where there remains time for successor counsel to remedy his negligence.  (Leffler Mem. 14-16.)  See, e.g., Volpe v. Canfield, 654 N.Y.S.2d 160 (2d Dep't 1997).  This principle is merely another way to state that a lawyer must proximately have caused the client's claimed harm to be liable in malpractice.  See id. at 161.  However, Leffler fails to extinguish any issue of fact as to whether, in the period between his withdrawal and the state trial, there actually was time to cure any harmful effect from his allegedly negligent representation, or whether his conduct indeed caused the harm about which plaintiff complains.[21]

There is a genuine issue of fact as to whether Diamond would have been foreclosed at the point of Leffler's departure from being able to pursue lost earnings and future medical expenses by amending her claims.  Leffler argues that, as of his withdrawal, plaintiff was still procedurally entitled to one amendment of her bill of particular as of right.[22]  If this were so, it would negate any possible prejudicial impact of his failure to assert the omitted items of damages, because Sokol would have had the ability to amend the bill on his own authority, something he clearly had time to do.  However, Leffler's argument appears to be wrong and, at the least, leaves an

---

[21] Leffler does not attempt to argue that he is entitled to summary judgment on the issue of negligence.  While Diamond's presentation against him is sketchy, it is not impossible on the existing record for a reasonable jury to find Leffler liable for provable damages, as a result of a negligent failure to assert her claims.

[22] "N.Y. C.P.L.R. 3042(b) . . . permits parties to amend their bills of particulars once as of course (i.e., without permission of any other party or the court) . . . . before . . . the case is placed on the trial calendar.  [Otherwise,] the party must make a motion for leave to amend the bill."  Davies, McKinney's Forms CPLR, References, § 4:346(e).

issue of fact for trial.  The May 2001 bill, which he submitted on behalf of Diamond, despite its

bearing the caption heading, "Supplemental Bill," appears substantively to have *amended* her

previous bill, as it adds a claim for "TMJ syndrome," apparently a new injury.  Generally

speaking, as applied to damages, a supplemental bill updates the bill of particulars by adding

additional expenses for injuries already disclosed, while an amended bill introduces new injuries.

As the practice commentaries advise:

> [I]n personal injury actions, one must distinguish between an
> amended bill of particulars and a supplemental bill of particulars.
> . . .  At any time at least 30 days before trial, a party may serve a
> supplemental bill as of course with respect to claims of continuing
> special damages and disabilities.  . . .  However, that supplemental
> bill may not allege a new cause of action or claim a new injury.

Davies, McKinney's Forms CPLR, References, § 4:346(e),(g), citing N.Y. C.P.L.R. § 3043(b).

See also, e.g., Fuentes v. City of New York, 771 N.Y.S.2d 178 (2nd Dep't 2004) (self-labeled

"supplemental" bill of particulars determined to be an amended bill of particulars, as it sought to

add new injuries and new category of damages).  That Leffler insists that "TMJ syndrome" is but

an elaboration on previously claimed injuries, while plaintiff submits otherwise, merely creates

an issue of fact for trial.

Further, as discussed above, while there is no doubt that the state court had the discretion

to permit amendment of the bill of particulars at any point, it remains a question of fact whether

the New York courts would likely have granted such permission in this case.  Leffler has not

submitted any dispositive authority showing that the factors considered by the courts in assessing

such motions to amend, in the circumstances of this case, would certainly have resulted in

permission if Sokol had sought it.  In short, Leffler can no more assume that leave to amend

would have been granted than Sokol can assume that it would have been denied.  In any event,

had Leffler included lost earnings in the bills of particulars he prepared, Sokol would not have needed to move to amend, and Diamond would not have been exposed to any risk of denial of leave to do so.  A jury must determine whether either lawyer was negligent and if so, the proportion of responsibility borne by each.

Accordingly, Leffler's motion for summary judgment is denied to the extent that he may be found liable for his representation of Diamond prior to November 7, 2002.[23]

## V.    Plaintiff's Cross-Motion for Summary Judgment

The Court declines plaintiff's invitation to render judgment for her sua sponte (P. Mem. 11), as the sole case plaintiff cites in support does not remotely militate such an outcome.  The court in Kenny v. Zimmerman, 586 N.Y.S.2d 80 (4th Dep't 1992), affirmed summary judgment for the plaintiff in a legal malpractice action, where an initial jury verdict in the underlying personal injury case had been reversed – and a second trial ended in a verdict of no cause of action – specifically because plaintiff had been precluded from offering certain evidence by the failure of her counsel to claim and produce discovery relating to her an injury.  In Kenny, there was clearly no way a reasonable factfinder could conclude that the defendant attorneys had not caused their client's loss.  The verdicts there unequivocally established that the sole cause of plaintiff's deprivation was her attorneys' failures.

There is no such clarity in the instant record.  While plaintiff has presented sufficient evidence to survive defendants' motion for summary judgment, abundant issues of fact preclude summary judgment in her favor.  A reasonable jury could easily find that Diamond's claims for

---

[23] Leffler's argument that plaintiff is somehow precluded from bringing this action, because she verified bills of particulars that omitted claims for lost income and complete medical expenses, is rejected, for the same reasons Sokol's similar argument was rejected, *supra*.

27

additional damages for lost earnings would have been rejected, and/or that defendants' professed strategy of concentrating on the largest and most potent claim – the claim for pain and suffering – without the distraction of weaker or smaller items of damages was entirely reasonable.

Accordingly, plaintiff's motion for summary judgment is denied.

## CONCLUSION

For the foregoing reasons, the motions of Sokol and Leffler for summary judgment are granted as to the dismissal of the cause of action for breach of contract and as to the imposition of a cap of $740,000 on damages, and in all other respects denied. Plaintiff's motion for summary judgment is denied.

SO ORDERED.

Dated: New York, New York
        December 27, 2006

                                                             GERARD E. LYNCH
                                          United States District Judge