```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
RACHEL DIAMOND,                                             :
                                                            :
                              Plaintiff,                    :
                                                            :        05 Civ. 4993 (GEL)
              -against-                                     :
                                                            :        **OPINION AND ORDER**
DAVID J. SOKOL; DR. DAVID J. SOKOL,                         :
ATTORNEYS AT LAW; MARC R. LEFFLER,                          :
and LEFFLER & KATES, LLP,                                   :
                                                            :
                              Defendants.                   :
                                                            :
------------------------------------------------------------x
```

Jack A. Gordon and Brett G. Canna, Kent, Beatty & Gordon, LLP, New York, New York, for Plaintiff.

A. Michael Furman and Andrew R. Jones, Kaufman Borgeest & Ryan, LLP, New York, New York, for Defendants David J. Sokol and Dr. David J. Sokol, Attorneys at Law.

William T. McCaffery, L'Abbate, Balkan, Colavita & Contini, L.L.P., Garden City, New York, for Defendants Marc R. Leffler and Leffler & Kates, LLP.

GERARD E. LYNCH, District Judge:

  This Opinion and Order addresses the parties' various motions in limine in preparation for the upcoming trial in this legal malpractice case.

  The factual background relating to the case are fully set forth in the Court's earlier opinion denying defendants' motions for summary judgment, Diamond v. Sokol, 468 F. Supp. 2d 626 (S.D.N.Y. 2006), and need not be repeated here. The parties are fully familiar with that background, and interested readers are referred to that opinion.

Plaintiff's Motions

1. Plaintiff moves to preclude the testimony of defendant David J. Sokol's proffered legal expert, James McPhilliamy. The motion is denied.

Plaintiff's primary argument is that McPhilliamy's testimony is "pure legal conclusion, with no analysis or basis." (P. Mem. 3.)[1] This is not correct. Although McPhilliamy's report includes scant legal analysis, his testimony is not offered to inform the jury about the underlying law, which is hardly in dispute and in any event is the province of the Court. Rather, the primary function of his proposed testimony is to address issues rooted in the experience of practicing lawyers. For example, McPhilliamy offers opinions about the strength of the plaintiff's potential case for economic loss in the underlying action, how a jury would be expected to react to various claims, how New York State judges would be expected to rule on matters confided by law to their discretion, and the reasonableness of various tactical decisions. These are matters within the expertise of experienced trial lawyers; indeed, it is precisely for their judgment about such questions that clients retain and pay lawyers, and it is on such judgments that legal professionals rely in deciding what claims to advance and when and whether to settle cases. McPhilliamy is an experienced lawyer in dental malpractice matters, and plaintiff does not question his credentials or competence on such matters.[2]

---

[1] In this portion of the Opinion, "P. Mem." refers to plaintiff's memorandum of law in support of her motions in limine, and "D. Sokol Mem. Opp." refers to defendant Sokol's memorandum in opposition to plaintiff's motions in limine.

[2] To the extent that plaintiff suggests that the Court has already ruled McPhilliamy's testimony inadmissible, plaintiff misunderstands the Court's ruling. In a footnote in the summary judgment opinion, the Court in passing set McPhilliamy's testimony aside, in large part because the record at that point did not contain any evidence of his qualifications. 468 F. Supp. 2d at 636 n. 9. That defect has now been supplied, and, as noted, plaintiff does not dispute

Plaintiff's subsidiary arguments are no more persuasive. Contrary to plaintiff's contention, McPhilliamy does not purport to offer an opinion as to the credibility of any witness; he discusses only how a reasonable lawyer would have sized up plaintiff's case, and the tactical decisions a reasonable lawyer would have made in light of such an evaluation. Nor does McPhilliamy's testimony "usurp the role of the jury." (P. Mem. 6.) As plaintiff acknowledges, a legal expert in a legal malpractice case may offer his or her "conclusion[s] that the defendant did or did not exercise the appropriate standard of care." Middle Market Fin. Corp. v. D'Orazio, 2002 WL 31108260, at * 8 (S.D.N.Y. Sept. 23, 2002). Plaintiff's own expert proffers similar conclusions. That the jury will have to reach a conclusion on that issue does not render the testimony inadmissible.

2. Plaintiff seeks to preclude certain portions of the proposed testimony of Fred Goldman, defendants' economic expert, arguing that two brief portions of that testimony go beyond the witness's expertise, by addressing legal rather than economic questions. The motion is completely lacking in merit, and is denied. Goldman offers no opinion on any legal issue. He simply notes certain largely indisputable aspects of New York law with respect to damages (such as the effect of income taxes and the manner in which future damages would be paid) as the basis for his mathematical calculations regarding the economic value of plaintiff's potential lost earnings claim in the underlying action.

---

McPhilliamy's credentials. In any event, the Court emphasized in the referenced footnote was that "the qualifications and opinions of dueling experts are issues for trial." Id. The Court made no rulings on the admissibility of evidence; it ruled, rather, that the opinions of defendant Sokol's experts could not entitle him to summary judgment.

3. Plaintiff seeks to preclude portions of the proposed testimony of Edmond Provder, defendants' vocational expert, arguing that those portions go beyond the witness's expertise by addressing medical questions. The motion is denied. Again plaintiff misconceives the relevance of the evidence. Provder does not address any issue with respect to the seriousness of plaintiff's medical condition or the effect of such condition on her ability to work. Rather, the challenged portions of the testimony address the potential role of a vocational expert such as himself in the underlying action and the likelihood that a person with plaintiff's qualifications could be expected, absent the effects of her dental condition and its mistreatment, to obtain certain employment. These are matters within Provder's expertise.

4. Plaintiff seeks to preclude the testimony of a hearing expert, Susan Waltzman. The motion is granted. As plaintiff has withdrawn any claim of hearing loss, Waltzman's testimony is not relevant to any issue remaining in the case. Defendants' argument that Waltzman's testimony is relevant to prove that plaintiff at some point advanced a claim, now withdrawn, that was without merit is rejected. The time consumed, and the juror confusion risked, by trying the merits of withdrawn claims far outweighs any minimal light such testimony would cast on plaintiff's credibility.

5. Plaintiff argues that the defendants should not be permitted to refer to the Court's prior ruling capping damages in this action at $740,000. The motion is denied.

In the underlying action, plaintiff agreed, as part of a compromise to permit the case to go forward after the death of the underlying-defendant dentist, to limit the damages in that case to $1,000,000, the amount of the dentist's insurance coverage. In the summary judgment opinion, this Court ruled that because plaintiff did not raise a genuine issue as to the fact that she had agreed to the cap, and because her complaint did not allege (and she presented no evidence) that her attorneys were negligent in advising her to do so, as a matter of law she could not have recovered more than $1,000,000 in damages in the underlying action, and therefore, since she did recover $260,000, any negligence by her attorneys could not have caused more than $740,000 in damages. 468 F. Supp.2d at 640.

Plaintiff suggests that she should be entitled to prove the full extent of the damages that she contends could have been proven in the underlying action, and the jury should be instructed to return a verdict for the full amount, with the damages cap applied after the fact by the Court. For reasons discussed below in connection with defendants' motion, this suggestion is sensible enough. However, that does not mean that the jury should not learn of the $1,000,000 cap in the underlying case, or of the effect of that cap on the judgment that could be entered here.

One of defendants' principal factual arguments is that their disregard of plaintiff's potential economic damage claims was reasonable because those claims were weak and her claim of pain and suffering strong, and that it therefore made tactical sense not to weaken the credibility of the case by presenting a weak claim. They further posit that the damages limitation has a bearing on the reasonableness of this tactical decision; with the damages limited in any event, the relative merits of different claims would arguably look different than they might in a case in which unlimited damages were a possibility. In order to evaluate the defendants' conduct

of the litigation, the jury must review that conduct in light of the facts and circumstances of the underlying action. See e.g., Rosner v. Paley, 65 N.Y.2d 736, 738 (1985); Hand v. Silberman, 789 N.Y.S.2d 26, 27 (1st Dept. 2005). The Court cannot rule as a matter of law that the damages cap could not be relevant to the tactical judgment of a reasonable trial lawyer. And if the jury in this case is advised of the underlying damage cap, it would be confusing to the jury to leave them to speculate about the impact of that cap on the outcome of the present case.

6. Plaintiff argues that defendants should be precluded from referring to New York's rules on collateral sources, taxes, and the method of payment of damages for future injuries, contending that since such evidence would not have been admissible at the underlying trial, it is equally irrelevant here. The motion will be denied. As with the issue of the damages cap, it is a non-sequitur that evidence irrelevant to the underlying case is irrelevant at trial of the present action. A jury in a personal injury case need not concern itself with set-offs against damages that New York law provides should be calculated and applied by the court. In this action, however, the issue is the reasonableness of the attorneys' actions in prosecuting the original action, and how plaintiff was or was not harmed by any negligence on their part. To assess these issues, the jury needs to understand the totality of the legal circumstances facing those attorneys, including the issues they would have to litigate to the court as well as to the jury in the underlying action, and the actual benefits (not merely the jury award) that plaintiff might have derived had the case been litigated differently. There is thus no basis for precluding testimony, principally the

testimony of the economic expert Goldman, that includes calculations based on the rules of law in question.[3]

      7. Plaintiff seeks to preclude defendants from offering testimony that the dentist was not negligent or that the medical expenses plaintiff claims should have been sought were not causally related to any negligence. The former motion is granted and the latter denied.

      Defendants argue that they should be permitted to retry the entire underlying malpractice action, including the liability aspects (D. Sokol Mem. Opp. 19-22.) They rely on two correct, but not applicable, legal propositions. First, they correctly note that they cannot be bound by the judgment at the first trial that the underlying-defendant dentist was in fact negligent. This is so; since they were not parties to the underlying action, they cannot be collaterally estopped from litigating the issue. See, e.g., Lyons v. Medical Malpractice Ins. Ass'n., 713 N.Y.S.2d 61 (2d Dept. 2000). But that is beside the point; the issue here is not estoppel but relevance.

---

[3] Plaintiff similarly confuses the issues by arguing that this Court will be required to apply New York law on these subjects in this case. (P. Mem. 14.) The legal premise is correct: in a diversity case, the provisions of N.Y. C.P.L.R. §§ 4545, 4546 and 5031 are treated as substantive law that must be applied in diversity actions. See, e.g., Jacobson v. Chaglassian, 1992 WL 233891, at *2 (S.D.N.Y. Sept. 9, 1992). It is far from clear, however, that those provisions have any application to this case. In the underlying action, plaintiff (if her attorneys had pursued the claims she now says they should have) would have been suing for lost future earnings, and the calculation ultimate judgment would therefore be affected by these statutes. In this case, however, plaintiff's damages are not future earnings, but the judgment she would have received in the underlying trial had her attorneys not been negligent. The correct measure of damages therefore depends on the judgment she would have received after application by the underlying trial court of the New York rules in question, in comparison the judgment she did in fact receive. This is a calculation to be made by the present jury, after hearing evidence bearing on what that judgment would have been, and does not involve any computation by the Court.

Second, defendants cite the "case within a case" principle of New York law, Aquino v. Kuczinski, Vila & Assocs., P.C., 835 N.Y.S.2d 16 (1st Dept. 2007), which requires that a plaintiff in a legal malpractice case a plaintiff must prove first "the hypothetical outcome of the other litigation before finding the attorney's liability in the litigation before it." Lindenman v.Kreitzer, 775 N.Y.S.2d 4, 8 (1st Dept. 2004) (internal citations and quotation marks omitted). This rule typically requires the plaintiff to prove each and every element of the underlying cause of action.

This rule, however, derives from underlying tort principles of causation. To prove that an attorney's departure from reasonable standards of care caused an injury to plaintiff (in the form of a lost claim for damages), the plaintiff must prove that "but for the alleged malpractice of the defendants, the judicial determinations at issue would have been more favorable to [him]." Zasso v. Maher, 640 N.Y.S.2d 243, 243 (2d Dept. 1996). In other words, even if the attorney negligently departed from professional standards – say, by failing to file a claim before the statute of limitations ran – the plaintiff cannot prove damages unless she establishes that she had a meritorious claim. If she would have lost anyway, because she could not prove an element of her cause of action, the attorney's negligence, however reprehensible, caused her no harm.

In this case, however, plaintiff is not claiming that the attorneys' negligence caused her to lose her case; she *won* the underlying case (thanks to the efforts of the defendant attorneys), by demonstrating the dentist's malpractice. The claim at issue here is that the attorneys negligently failed to seek recoverable items of damages, and that as a result she recovered less than she would have recovered had defendants properly pursued the case.

Thus, defendants' proposed evidence that the dentist wasn't "really" negligent in the first place is irrelevant. Such evidence cannot undermine plaintiff's claim here, because the argument that the jury got the liability issue wrong at the first trial cannot affect the causation issue here. In the statute of limitations example, if the plaintiff could not have established liability at the underlying trial had it occured, the failure to timely file could not have caused damage because the case could not have been won even if the lawyer had acted diligently to file the case; the jury in the lawyer malpractice case must assess the likely outcome of the hypothetical case that the lawyer failed to file. Here, in contrast, since the underlying case *was* successfully tried, the causal connection between the failure to seek additional damages and the failure of the jury to award such damages is direct, and cannot be broken by a hypothetical relitigation of the underlying liability case.

The question to which the "case within a case" rule addresses itself is whether the lawyer's malpractice "contributed to a trial outcome less favorable than would otherwise have been achieved." Weil, Gotshal & Manges, LLP v. Fashion Boutique of Short Hills, Inc., 780 N.Y.S.2d 593, 595 (1st Dept. 2004). As the court there noted, the plaintiff must prove "the value of the claim lost." Id. at 596. Here, the claim *lost* consists of the elements of damages that plaintiff was allegedly precluded from proving by the defendants' failure to include them in a bill of particulars or to seek them at trial. Whether plaintiff should not have prevailed on claims that were *won* is not in issue in the case.

For just those reasons, however, whether the medical expenses plaintiff claims should have been recovered were causally related to the underlying dental malpractice *is* in issue in this case, and is contested. That "the jury [in the underlying trial] found that [the underlying-

9

defendant dentist's] negligence caused [p]laintiff's injuries" (P. Mem. 15) does not mean that the medical expenses plaintiff claims were related to those injuries. Plaintiff still must prove that the medical expenses she says the defendants should have sought would have been recoverable in the underlying trial; that is, she must prove in this trial that those expenses resulted from the negligence of the underlying defendant.

8. Plaintiff argues that defendants should not be permitted to raise an issue of noncollectability. The motion is denied as moot. Defendants do not suggest that there would have been any difficulty collecting damages up to the $1,000,000 value of the insurance policy, and apparently concede that a judgment of up to $1,000,000 would have been collectable.[4] There is thus no issue in the case as to the collectability of any damages, up to the cap discussed above, that plaintiff can prove were caused by her attorneys' negligence.

Defendant Sokol's Motions

1. Defendant Sokol seeks to preclude plaintiff from introducing "any evidence relating to vague or conclusory claims of negligence." (Sokol Mem. 3.)[5] To the extent that the motion seeks to reinforce the Court's prior ruling that plaintiff has abandoned any claim of negligence other than the claim that defendants "fail[ed] properly to present her claims for medical expenses

---

[4] That damages beyond $1,000,000 could not have been awarded is not a question of collectability at all, but simply results from plaintiff's agreement – not attributable to any negligence on the part of her attorneys – to limit her recovery to that amount, as discussed above.

[5] In this section of the Opinion, "Sokol Mem." refers to the memorandum of law in support of defendant Sokol's motions in limine, and "P. Mem. Opp." refers to the plaintiff's memorandum of law in opposition to defendant Sokol's motions in limine.

and lost earnings damages," 468 F. Supp. 2d at 634, it is granted. Any other claims of negligent performance have been abandoned, to the extent they were ever raised. Plaintiff objects to the motion, yet even at this late date, on the very eve of trial, she fails to provide the slightest indication of what other negligence she might have in mind, let alone to point to any evidence of such negligence. This trial is about the claimed malpractice of defendants in failing to include a claim of lost earnings in a bill of particulars, or to present evidence of medical expenses at trial. No other theories of negligence were presented or defended by plaintiff at the summary judgment stage, nor articulated since, and plaintiff will not be permitted to make new claims of negligence at trial.

2. Defendant Sokol moves to preclude plaintiff from introducing "any evidence relating to alleged damages beyond $740,000." (Sokol Mem. 7.) The motion is denied. Plaintiff, of course, can have no idea what damages the jury will find established, and plainly cannot limit her evidence of damages to any particular number. As the Court has ruled, any damages *awarded* must be limited to $740,000. But plaintiff legally may and tactically must present evidence of any damages she claims she suffered; the jury will decide how much, if any, of such damages have been proved.[6] Defendant offers no method by which either plaintiff or the Court could identify which items of damages go beyond the cap amount, and plainly there is none.

---

[6] Indeed, although the matter need not be decided now, it may very well be in the interest of judicial economy to ask the jury to decide the total amount of damages proved, since doing so would protect against the need for a retrial should it later be decided that the Court erred in limiting recovery to $740,000.

3. Defendant Sokol moves to preclude plaintiff from introducing the testimony of her vocational expert, David Stein. The principal basis of the objection is that Stein's methodology is unreliable, insofar as he relies upon information developed after the underlying trial. The motion will be, for the most part, denied.

As plaintiff points out (P. Mem. Opp. 6), defendant's objection is not really to Stein's methodology, but to limited portions of his proposed testimony that rely on reports of a medical doctor that were made after the underlying trial. Defendant does not, however, dispute the admissibility of that doctor's testimony. The doctor's testimony, in turn, is based essentially on medical records which pre-date the underlying trial. The parameters of Stein's testimony, however, should be clear. Plaintiff's claim is that her attorneys should have seen to it that a claim for future lost earnings was included in the bill of particulars, so that such a claim could have been advanced at trial. She thus needs to establish that evidence to support such a claim could have been developed, and if presented would have resulted in a jury verdict in her favor. It is thus relevant whether a vocational expert would have been helpful in this regard, and whether the testimony of such an expert would have persuaded a jury that damages should have been awarded. Such testimony must be based on plaintiff's medical condition as of the time of the trial, and the findings that an expert would have presented at the time of trial. Stein may not rely on, or testify to the jury about, his beliefs with respect to plaintiff's *actual* medical condition after the underlying trial, but only with respect to what a reasonable vocational expert would have understood, as of the time of the trial, her future condition could be expected to be. In reaching these conclusions, however, Stein is thus free to rely on plaintiff's medical expert's opinion with respect to her condition as of the time of the trial. Stein is not a doctor, and he must

rely on a medical expert's views with respect to what the records existing at the time would have shown. Defendants, of course, will be able to cross-examine both the medical expert and Stein with respect to the reliability of their conclusions.

4. Defendant Sokol seeks to preclude plaintiff from offering the testimony of plaintiff's economic expert, Richard Ruth. For the most part, the argument is parasitic on the motion directed to the testimony of Stein: defendants argue that Ruth's analysis depends on the conclusions of Stein, and since they contend Stein's conclusions are unreliable, so must be Ruth's. The rejection of the previous motion thus entails the denial of this one.

More substantial is defendants' claim that Ruth's analysis rests on unsubstantiated claims made by plaintiff herself with respect to her expectations of promotion. Defendants are correct that Ruth's testimony cannot be evidence as to the truth of plaintiff's claims with respect to her future expectations of a successful career trajectory. These claims must stand or fall on their own merits. Ruth's report is essentially a mathematical projection of future earnings, not a prediction of plaintiff's likelihood of achieving the positions from which such earnings derive. The jury will be clearly instructed as to the difference, and if no admissible evidence supporting the premises of Ruth's testimony is received, the admissibility of his presentation can be revisited.

Defendant Leffler's Motions

1. As discussed in the Court's summary judgment opinion and the order granting partial reconsideration of that opinion, defendant Marc R. Leffler was succeeded by Sokol as counsel

for plaintiff in the underlying action. While the claim for damages with respect to lost future earnings was not included in the bill of particulars – an omission for which Leffler arguably bears some responsibility – the claim for medical expenses was, and so the failure to present evidence of such expenses was the responsibility of Sokol as trial counsel, not of Leffler. Defendant Leffler moves that plaintiff be precluded "from offering evidence against the Leffler defendants beyond plaintiff's claim based on her alleged lost earnings." (Leffler Mem. 6.)[7] Plaintiff concedes that "the only remaining claim against the Leffler Defendants is for lost earnings." (P. Mem. Opp. 1.) The motion is thus granted, to the extent that the jury will be instructed that Leffler cannot be held liable for the failure to prove plaintiff's medical expenses, and that evidence relating to that issue is not to be considered against Leffler.

2. Defendant Leffler argues that "plaintiff should not be permitted to offer any evidence from any date after the date of the underlying trial." (Leffler Mem. 7.) While the motion and the very brief supporting argument are too vague and overbroad to be granted in terms, the motion is granted to the extent of the principles set forth above. The issue in this trial relates to what the defendants could have known and argued at the time of the underlying litigation. If, for example, plaintiff's condition worsened in some way after trial, such changes in her medical condition would be irrelevant to the question of what damages a reasonable attorney should have sought or could have obtained at the underlying trial. Similarly, contrary to plaintiff's contention, plaintiff's actual employment history after the trial is not relevant; what is relevant is

---

[7] In this section of the Opinion, "Leffler Mem." refers to defendant Leffler's memorandum of law in support of his motions in limine, and "P. Mem. Opp." refers to plaintiff's memorandum of law in opposition to Leffler's motions in limine.

what plaintiff and her attorneys could reasonably have projected, and what damages they should have pursued and could have obtained, based on what was known at the time of the trial.

3. Defendant Leffler seeks to preclude evidence relating to "meta-tags" on Sokol's website that, according to plaintiff's counsel, result in a Google search of Sokol's name eliciting a web page referring to "The Law Offices of Dr. David J. Sokol and Dr. Marc Leffler." (P. Mem. Opp. 4.) The motion is granted. Plaintiff's contention that "[e]veryone knows what Google is, and everyone knows what search results mean" (id.) is simply false. It is not clear to the Court, and plaintiff provides no reason to believe, that the fact that a Google search for material in 2006 relating to Sokol turns up a page containing Leffler's name means that Sokol was "still advertising [his] affiliation" with Leffler at that time, as plaintiff claims. (Id.) Plaintiff may well have a good faith basis to cross-examine Leffler and/or Sokol about what they did or did not put on their respective web-sites, if any, at various times. But as of this time plaintiff has offered no proper foundation for introducing the results of his internet search.

4. Defendant Leffler claims that the testimony of two of plaintiff's proposed witnesses will be merely cumulative, because they "can offer no testimony that will not be offered by the plaintiff, herself." (Leffler Mem. 11.) The claim is frivolous. Leffler refers to nothing whatsoever in the record to support his claim about the content of the witnesses' testimony, and as defendants apparently did not depose the witnesses, there *is* nothing in the record that could support the claim. Moreover, even if the claim was accurate, testimony corroborating that of

15

plaintiff, who could be impeached as having an obvious financial interest in the case, would hardly be excluded as cumulative.

## CONCLUSION

For the reasons set forth above, the motions in limine of plaintiff (Doc. #71), defendant Sokol (Doc. #70), and defendant Leffler (Doc. #62) are disposed of as discussed above, and the Clerk of Court is respectfully directed to close out those motions for purposes of all internal statistical reports.[8]

SO ORDERED.

Dated: New York, New York
October 29, 2007

GERARD E. LYNCH
United States District Judge

---

[8] The Clerk is also respectfully directed to close out Doc. #70, which erroneously appears in court reports as an open motion. That document is not a separate motion, but a memorandum of law filed in support of defendant Sokol's motions in limine (Doc. #69), which are decided by this Opinion and Order.